15-3146 N. Ray Royal Manor Management Inc. Oral argument, 15 minutes per side. Mr. Grossman for the appellant. Morning, Your Honors. I am Dennis Grossman. I'm the appellant pro se. This is not a very pleasant experience for me. I've been an attorney for over 40 years in New York, less in Florida, various federal courts. I've never had an experience like this. This is kind of the litigation analog to the bad dream we all had in college or law school that we wake up the morning of a final and realize we haven't attended any classes the entire semester. This is kind of a litigation analog to that. It's kind of a surreal experience that's just not in my range of experience at all. And where to start with all these issues? And probably the best way to start is a question that Judge Humphrey, the presiding judge, asked me during the BAP oral argument. He said, don't you think all your filings were excessive? I've counted them at 124, he said. And he said, isn't that excessive? And I responded by saying, well, in all honesty, I haven't counted them, but I urge you to consider the fact that that number, whatever it is, is over a four- or five-year period. It averages out to, what, two or three per month. And then after the oral argument, I went back and I said, well, wait a minute. Is that even a fair question? For the following reason. I'm being sanctioned, or I was sanctioned, for what my conduct allegedly was during the trial, during the merits phase, or during the trial itself, or during the proceedings leading up to the merits resolution. If you exclude all of the sanctions filings, and all of the filings relating to appeals, and if you also exclude all of the filings relating to the trustee's frivolous assertion that a 28-day notice was okay under the 30-day rule, how many filings are left which dealt with the merits of a $2 million claim? And I counted them. 25. I had 25 filings. Now, you can argue give or take, two or three, up or down. But to litigate a $2 million claim on its merit, and to only have 25 filings approximately? If you want to do the math, if you want to count, there are 155 motions that you filed in the bankruptcy court, or responses that were precipitated by the motions that you filed. In the BAP, 23 filings in the BAP. You have seven appeals during the course of this, not counting the appeals to the Sixth Circuit. It's just, frankly, hard to understand how you could stand there and not think somebody might think this was vexatious. You might think you are an aggressive litigator, and that's fine, but there is a line, and it's hard to know where that line is. But I would suggest to you, this conduct seems so far over that line that it doesn't even hardly seem to be in dispute. Well, I don't know where this... I mean, there are different appeals because different final orders came up at different times. But basically speaking, in terms of the merits, there was one series of appeals. Now, I had to appeal at different times because there were different appealable orders. If I didn't exercise my right to appeal at a given time for a specific order, I would have waived it. I would have been out of luck. So, I mean, to say that there were seven appeals... Yeah, but there was one series basically in the district court on the merits. I know it came up in one appeal on the new claim and one appeal on the basic claim. But, number one, I'm not being sanctioned here for my conduct during the appeals. Indeed, the only argument, the only motion that was ever made that I did something frivolous in connection with an appeal was denied by Judge Gawin. Judge Gawin ruled that, all right, it may have been impromptu, but she expressly ruled... Let me ask you this specific question. You don't think there's some suggestion here that seeking to have the bankruptcy judge recuse herself seven separate times might be a little excessive? Well, number one... I don't know where that figure... I mean, there were re-arguments, but basically there were three recusal focuses. There might have been re-arguments, there might have been replies, but there was a recusal request right after... Six of them are in writing, one of them is orally. You know something? If, with all due respect, if you think that those recusal motions were frivolous and vexatious, sanction me for that. Sanction me for that. And then we'll do the math in terms of how much time was involved in that. I respectfully submit that a lot of those... that those motions were not frivolous. For example, the motion I made to the bankruptcy judge the morning of the sanctions trial, that was based upon her statement one week earlier at the discovery hearing, where she, sua sponte, opened up, I didn't provoke this at all, and she accused me, on the record, of causing all the delays with the twists and turns in the case. And I responded, and I said, with all due respect, Your Honor, that's just not true. You flip-flop back and forth four times, stopping us and starting us and stopping us and starting us. And I said, how could that possibly not cause delay? There was a very clear personal dispute between me and the bankruptcy judge, on the record, as to who caused the most delay. You know, how could a judge not be recused there if she's going to decide that issue in which she has a vested interest, in which she's a disputant? In her two decisions, nine times, the bankruptcy judge decided that she wasn't responsible for the delay, that only I was. How is that not a self-interested decision? Well, that happens all the time. Well, it happens all the time that there might be delays, but not that a judge decides whether he or she is responsible for that delay. Yeah, judges, right. Did the judge have the discretion to order us to flip-flop back and forth four times? No doubt about it. I never disputed the judge's authority to structure the case in what the judge perceived to be a reasonable way. But that's not the issue. The issue is, once the judge did that, and that clearly caused some delay, is it fair, is it compliance with due process for the judge then to say, okay, I will decide whether I, the judge, caused the delay. It happens in speedy trial issues all the time. The court has to decide whether the delay is attributable to the prosecution, the defendant, or the court. Well, but here there was a personal dispute. I mean, the judge might have to decide whether or not there was a delay, but that doesn't mean that the judge was involved in a personal dispute there. There was very clearly, I mean, read the record. It was very clearly a personal dispute between me and the judge. There's no other way to reasonably interpret this. I mean, unfortunately it happened. This was not a pleasant experience for me. I didn't enjoy going through the whole sanctions process. And frankly, with all due respect to your honors, I don't enjoy being here arguing this right now. But it was very clearly a personal dispute. In addition to that, the other recusal issues, I mean... You seem to believe that any time there's a disagreement between a judge over a legal proposition, therefore it's become personal. No. And that simply is not the way it works. No, that's not what I'm, I mean, I have disputes with judges all the time. I mean, that's the nature of the process. That doesn't mean, and I've been criticized... I've been criticized by judges, you know, frequently. I've had a 40-plus year career. You know, you don't go through that as a litigator without having conflicts with judges. That doesn't mean that the judge should be disqualified. But this is something different here. This was a personal, I've never confronted a situation like this where the judge has told me, Mr. Grossman, you're the one responsible for the delay. I respond and I say, no judge, you are, and there's a reasonable basis for that. And then in a sanctions proceeding, have the judge decide whether she is responsible or I am. I respectfully submit that's not due process. Clearly the judge had a vested interest in deciding that issue in her own favor. She's a personal disputant. And that's in addition to the other matters in recusal. Mr. Grossman, with all due respect, that argument is simply silly. Will you move on to something else? Sure. Unless the panel has questions about that one. Fine. I will. Fairness. What is this case all about? Fairness, and it ties into legal propositions everywhere. This was far from a frivolous claim. I mean, Judge Sutton, yeah, he wrote a panel decision basically saying claim denied on de novo review. But there were reasonable basis on the one page, this is a one page contract. And the contract said, money is in the $1 million is invested in Darlington. Okay, clearly it went to the corporation. And after two years, it's going to be returned to the Gordons. The word return, give back, send back, that gives rise to a reasonable non-frivolous basis by use of the word return, by use of the word invested in the Darlington Corporation. It's a very non-frivolous basis that, yeah, okay, Darlington is liable. The form of the signature is not controlling under Ohio law. That's one of the first things I did research on when I was confronted or solicited by the Gordons to handle this case. I'm an attorney in New York and Florida. I was not familiar with Ohio law. I went to the law library to check out Ohio law to make sure that Ohio law, like New York and Florida law, focused on contract substance, which it did. And there was a very clear, reasonable, non-frivolous argument that the corporation is liable here. Look at Judge Sutton's decision when he wrote it four years ago. He had to navigate through the intricacies of the contract to decide, yeah, okay, he ruled again. Does it have to be a frivolous claim? It has to be a frivolous claim. In order to sanction me for a frivolous claim, yes. It doesn't have to be frivolous to sanction you for vexatious proceedings, which is exactly what happened here. Well, you're right as a proposition of law. You're right as a proposition of law. But if you look to the merits of it, if you look to my filings during the merits phase of the case, they're not that numerous, given the fact that this is a $2 million case. I mean, I think the panel can take judicial notice that when you review substantial civil cases where there's a lot of money at stake, and this was over $2 million, very frequently you get docket entries that are three, four, five hundred items long. There might be fewer. But in the context of a $2 million dispute, this was not overall vexatious. You might take issue with some appeals. If you think this appeal is frivolous, and I respectfully submit it's not, but if you think this appeal is frivolous, then sanction me for this appeal. You know, it's fascinating that you say, well, this is a complicated case. This is $2 million. This is a lot of money. It wouldn't be unusual to have three, four, five hundred docket entries. It might be true. You know how many docket entries there were in the bankruptcy court in this case? What stage are you talking about, Your Honor? We have a bankruptcy docket. It starts at the beginning, ends at the end. Oh, the totality, I think, went to over 1,000. It did. It went to over 1,179. I just think it's interesting that you think, well, hard case. Could really easily be three or four hundred docket entries. You're right, 1,200. But very few of them are mine. This involved other claims, other litigants, transfers of claims. No, 155 of them were yours or filings that you filed caused the response. All right. But that includes. Do you have any questions? That includes. You'll have your rebuttal. That includes. You'll have your rebuttal. All right. I would like to address the due process on rebuttal. Thank you, Your Honor. Good morning, Your Honor. Your Honors, I'm Louise Mazur. You can address due process. He's going to talk about it when he comes back up. If you don't, he isn't. Thank you, Your Honor. I'm Louise Mazur. I represent the liquidation trustee, the appellee in this case. I don't want to take time to argue the merits of the Gordon's claim. That's already been argued in this court. What I'd like to do is to address my comments to the sanction issue specifically. And notwithstanding the peripheral issues that Mr. Grossman raises, in my view, there are three main ones. The first issue is whether or not a bankruptcy court has the right to control the proceedings in her court. That's a general legal issue. And two specific legal issues in this case. Number one, whether the bankruptcy judge properly determined that Mr. Grossman had engaged in sanctionable conduct. And secondly, whether or not the bankruptcy judge properly determined the amount of sanctions. Your Honors, I submit based upon the reasons set forth in the record, as we've outlined in our brief, that the bankruptcy court properly awarded sanctions to the trustee because of the repetitive, vexatious, and bad faith conduct, and that the decision should be affirmed in all respects. I'd like to take a little time just to make sure to explain the procedural history. The issue of sanctions came up literally years ago in 2009. The trustee was invited to move for sanctions pursuant to bankruptcy rule 9011, which did occur. Mr. Grossman did have the opportunity to fully brief that issue. The liquidation trustee filed a reply brief and supplemented the request for sanctions pursuant to the court's inherent power. He again had the opportunity to brief the issue of sanctions under the inherent power. Subsequently, in January of 2010, the bankruptcy judge issued an order asking Mr. Grossman to show cause why he should not also be sanctioned pursuant to Section 1927. I bring this up to lay the groundwork for the more recent renewed sanction motion because I think it's important for me to stress to this panel that those sanctions considerations were stayed and held in abeyance by the bankruptcy judge because of all these appeals that stemmed from the Gordons' underlying claim. They had never been ruled on and the bankruptcy court made it quite clear that she intended to revisit all the sanction motions at a later point in time when the Gordons' claim had been finalized through the appellate process so that she could have a more complete picture of the circumstances. There are no sanctions at this point for any of the appeals, correct? That is correct, Your Honor. No sanctions at all. The bankruptcy court's opinion, first and second, regarding sanctions I think is very clear and I don't think that it's fair for Mr. Grossman here today to say that the sanction award was based solely on a determination that the Gordons' claim was without basis. That is not the only basis and I urge you please to read for yourselves those decisions and I would like to quote a little bit from them. Are you saying that there was a determination that it was frivolous? I think that the court made clear that Mr. Grossman on behalf of the Gordons did not produce evidence to establish that they were in fact legitimate claim holders and that's the reason why about 30 days after he entered an appearance he had filed a motion to amend. It's a pretty simple question. Was there a finding that it was frivolous? That the claim itself was frivolous? Yes, I believe so. And was that one of the basis for the sanctions? That was one of the basis for the sanctions. Yes, Your Honor. And in addition, the basis was the repetitive frivolous filings that the court expressly found was in bad faith for vexatious reasons and specifically geared to try to force a settlement. The bankruptcy court also stated that in her view, special scrutiny should be given in a bankruptcy context where the pool of funds available for distribution to the creditors was reduced because of the conduct of Mr. Grossman and he well knew that. In this case, the sanctions are particularly warranted because the money isn't going to the liquidation trustee. The money is going to the legitimate creditors of the Royal Manor bankruptcy and now liquidation trust. So I want to make clear that in both the first opinion of March and the second opinion, the bankruptcy court made clear that not merely was Mr. Grossman advancing a claim that he knew was frivolous, but also that his repetitive conduct showed bad faith and an intent to vexatiously multiply the proceedings. The first broad issue is whether or not a bankruptcy judge has the authority to control what happens in her court and I think the answer to that question is a resounding yes for two reasons. Number one, a bankruptcy judge has the power to impose sanctions under the inherent authority pursuant to 11 U.S.C. 105A. That simply requires a finding of bad faith such that it's obvious that a person is delaying the proceedings, such as what happened here, and disrupting the proceedings, which is again exactly what happened here. And Judge Shea-Stoneham in her finding did find bad faith on the part of Mr. Grossman. The second component of Judge Shea-Stoneham's finding was that the conduct was also sanctionable pursuant to Section 1927. Her finding in that regard stemmed from the fact that she felt that Mr. Grossman had abused the litigation process. Section 1927 permits a court to sanctions when that occurs and the purpose of that is to deter similar practices and also to punish the offender. And Judge Shea-Stoneham also referenced that. Does it apply to a bankruptcy court? Your Honor, the circuits are split on that currently and I understand that gets to the Stern issue. The In re Salt decision did a good job explaining, and that was pre-Stern, did a good job explaining the split of authority on that issue. This court before Stern, admittedly, in the Maloof decision, upheld imposition of sanctions by a bankruptcy court pursuant to 1927. It is my view that if this court looks at that issue beyond the inherent authority issue, that it should follow prior precedent and what most circuit courts are doing now, and that is to determine that bankruptcy courts do have the authority, notwithstanding Stern, to impose sanctions under Section 1927. I will say, however, that apart from that statutory authority, in this case the court did also find that sanctions were properly awarded under its inherent authority. Because I do think that there's overwhelming evidence of bad faith in the way that Mr. Grossman pursued the Gordons' claim in this litigation. Your Honors have already noted some of the sanctionable conduct of Mr. Grossman, and I think it's disingenuous for him to come before this court and try to claim that there was merely 25 filings. Because I did take time last evening to actually go through and try to note some of the filings that were made even after the court, even after the renewed sanction motions were filed. So let's talk about that. This brings us to the time frame of December of 2014. What did Mr. Grossman do? He first attempted to, again for the fourth time, depose the trustee's attorneys. He propounded written discovery to the trustee's attorneys. And in that written discovery, literally asked the trustee's attorney to produce documents that he already had in his possession. The day of the sanction hearing, he moved to withdraw the reference. He made a verbal request to recuse. I think the pattern of his conduct is evidenced by the way he reacted to the judge's denial of the motion to withdraw the reference. What did he do? I'm sorry, to withdraw what? Withdraw the reference. When Judge Pearson denied that motion to withdraw the reference, he immediately filed a motion for reconsideration. When Judge Pearson denied that motion for reconsideration, what did he do? Three days later, he filed another motion to recuse in the bankruptcy court. He filed four briefs challenging a settlement that the trustee reached with Gertrude Gordon on the separate issue of whether she should be sanctioned. Let's put this into context. This is Mr. Grossman's formal client, if you will. Although the claim was technically in the name of her children, the original claim was actually filed by Gertrude Gordon as POA for her children. So even though he didn't have standing, Mr. Grossman at that point was trying to prevent Gertrude herself from entering into a settlement. Let me tell you one thing that's readily apparent from the record that in my view shows the bad faith conduct of Mr. Grossman. Even though Gertrude Gordon hasn't been a part of this case since that settlement was affirmed, did you notice that Mr. Grossman still serves her on every pleading that he files, even though she's represented by another attorney now? Think about that. What possible reason can there be? To me, that screams the bad faith conduct that we have here, and it is pervasive. The personal attacks on the judge... We're getting a little far afield here, aren't we, Counsel? Let's get back to what happened in the Bankruptcy Court. Thank you, Your Honor. Getting back to the issues, and again, this is just after the renewed sanction motion was filed. We had a motion to dismiss, a credit motion after the initial opinion was rendered, and of course there was an appeal from that that was dismissed as well for lack of final order. After the final sanction order was issued, the trustee attempted to do two things. We want to collect the judgment, so we filed discovery, asking Mr. Grossman to give us information regarding his assets and to appear for a debtor's examination, and also move the Bankruptcy Court to permit us to obtain special counsel in two states where he practices and resides, being New York and Florida. We have an order from the Bankruptcy Court directing Mr. Grossman to respond to the discovery and to appear for a debtor's examination. He does not. Again, a pattern of bad faith conduct. It is simply impermissible for an attorney, be they licensed in this state or another or appearing pro hoc vicee, to so regularly and repetitively disregard orders of the court and engage in practices that abuse the litigation process, and that's exactly what happened here. I want to also stress to the judge's point regarding the issue of the validity of the claim that there were constant changes in the legal theories. I've already alluded to the amended claim. That claim was to adduce parole evidence in the form of Gertrude Gordon's testimony that she disagreed with the agreement itself in the four corners of what was stated on the agreement. But also, after the K-1s were discovered by the trustee and brought to the attention of Mr. Gordon, he filed yet another request for a new claim filing based upon claims of unjust enrichment and rescission. Again, these are legal grasping at straws to try to convert what was never a valid claim into something that was. And why? What motive? The motive is clear. Mr. Grossman would be paid if and only if he was successful in establishing a valid claim. Then he would receive 40% of whatever distribution the Gordons would. That is the motive for the activity, unfortunately, and I think the record is very clear. Your Honors, thank you for your time. For the reasons as I've set forth in the brief and those I've mentioned today, I urge this panel to please affirm in its entirety the decision of the Bankruptcy Court so that future similar conduct can be deterred and so that the pool of funds available for distributions to the creditors in this case can be made whole. Thank you. Mr. Grossman? Contrary to what Ms. Mazur said, there never was a finding by the bankruptcy judge that the claim was frivolous. She repeatedly said, no merit, no merit, no merit. There never was a finding by the bankruptcy judge that it was frivolous. In addition to that, that was part and parcel of the pattern of the decision by the bankruptcy judge. She never particularized, even under 1927, she never particularized what my alleged vexatiousness was. I mean, was the entirety of my filings vexatious? I don't think so. She said, quote, often frivolous findings. She lumped everything together, all the legitimate and what she found non-legitimate, never particularizing what she found to be non-legitimate. You really don't think you can glean that from Appendix A, which is 37 pages of what you did in this case? She never said what she found in that appendix to be frivolous. She merely listed my arguments. In this, Mr. Grossman argued, ABC. A lot of times her summaries were inaccurate, where they omitted pertinent arguments that I had. But wherever in any of her filings did she say, Mr. Grossman engaged in frivolous conduct because he filed this, ABCDE? It's not there. In addition to that, there's no particularity as to what my alleged vexatiousness was. She lumped everything together in an amorphous blob. Ms. Mazur points out that the renewed motion allegedly brought up all the prior sanctions motions. Not true. The only notice that I had of what was being tried was the renewed motion only. Look at Docket Entry 954. That's the notice of motion of sanctions. That's the renewed motion. Ms. Mazur points out in her argument that the judge imposed sanctions against me under both 1927 and the inherent authority. Not true. So the bankruptcy judge said he compounded his absence of compelling arguments with needless multiplication and repetition of specious arguments. If an opportunity presented itself, apparent or could be fabricated, close apparent, to file a pleading, Grossman took it, whether he had something new to say or not. Now, that combined with Appendix A, you seem to be arguing is insufficient because it was a duty to go through each and every pleading that you filed and say frivolous, not frivolous, vexatious, not vexatious. Is that basically your argument? If there was a specious, yes. Is that your argument? Yes, that's essentially it. Where do you derive your authority that that degree of specificity is required by the bankruptcy judge? By the particularity. I believe I cited it at page 68 or 67. This court. I'm just asking for your authority. If you know what it is, tell me. If you don't remember, don't remember. May I refer to my brief? Your red light's on. No. Okay. I'm not expecting you to remember. You want to cite us to page 67 of your brief? I don't recall the exact page, but every circuit, including this circuit, to address the issue of substantial sanctions, we're not talking about a $1,500 fine here. Every circuit to address the issue of substantial sanctions requires specificity, particularity, as to what it is that I did that was allegedly vexatious or not. Okay. We'll search your brief and we'll find it. Thank you, sir. You should reverse. Thank you, Your Honor. Thank you. Case to be submitted.